IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**MARCUS B. WASHINGTON,**

                **Plaintiff,**

       v.                                  CASE NO. 12-3014-SAC

**BRANDON WALMSLEY, et al.,**

                **Defendants.**


**MEMORANDUM AND ORDER**


This matter is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff, a prisoner in state custody, proceeds pro se. He submitted the initial partial filing fee as directed, and the court grants leave to proceed in forma pauperis.[1]

*Factual background*

The complaint identifies six defendants, namely, Brandon Walmsley, Unit Team Manager; Gary Wilson, Classification Administrator; Raymond Roberts, former Warden and current Secretary of the Kansas Department of Corrections; Jarris Perkins, Corrections Counselor II; Payton, Corrections Officer I; and Carrol, Corrections Officer I.

At all relevant times, plaintiff was incarcerated in the El Dorado Correctional Facility (EDCF). In September 2009, he sought

---

[1] Plaintiff is advised that he remains obligated to pay the balance of the statutory filing fee of $350.00 in this action. The Finance Office of the facility where he is incarcerated will be directed by a copy of this order to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

employment with Century Manufacturing ("Century"), a private business that maintains a site on the prison grounds and pays prisoners the minimum wage. His employment required the approval of the EDCF Program Management Committee (PMC).

In late September and early October, plaintiff sent correspondence to defendant Roberts, then Warden of the EDCF, inquiring of the status of the PMC decision. In mid-October, Roberts replied that under policy, those inmates with less than 60 months remaining on their sentences were given preference. Plaintiff, who does not meet that criterion, sought an override of this decision. In November, then-Secretary Simmons replied that the decision was a facility-level matter and not a departmental policy.

Approximately a year later, on August 1, 2010, plaintiff asked Deputy Warden Paul Snyder whether he could support his placement at Century, but Snyder declined, citing plaintiff's disciplinary history and sentence. On August 4, plaintiff asked defendant Walmsley, a Unit Team Manager, about whether Walmsley had spoken to PMC members concerning plaintiff's placement at Century. Walmsley advised plaintiff that it was not a good time to approach PMC members. Plaintiff asked for an explanation, and Walmsley replied, "your name is always ringing up front … whether it's this lawsuit…or some grievance…." (Doc. 1, p. 6.) During their conversation, defendant Walmsley stated that plaintiff might "choose [his] battles more wisely…." *Id*.

Plaintiff states that although defendant Perkins was present during this conversation, she failed to report this matter as a dereliction of duty and did not respond to his request that she report the matter to defendants Wilson and Roberts.

On August 20, 2010, plaintiff spoke to defendant Roberts about the remarks made by defendant Walmsley. Roberts advised plaintiff that he had reviewed a request for plaintiff some time earlier but there had been an issue of undue familiarity at the time. He assured plaintiff that each request is reviewed on the merits.

Plaintiff then commenced a grievance against defendant Walmsley concerning his remarks. On September 24, 2010, Walmsley met with plaintiff and advised him that the Warden had denied his placement with Century due to the length of his sentence and information contained in plaintiff's Enforcement, Apprehension and Investigation (EAI) file.

Plaintiff spoke with Lt. Hermreck of the EAI department, but Hermreck said he was unaware of anything in the file that would prevent his placement with Century. Plaintiff also spoke with defendant Roberts, who advised him that while no formal policy consideration prevented his placement with Century, he wanted to maintain a balance of prisoners working there. Roberts advised plaintiff that he was on the right track.

On September 27, 2010, plaintiff sought a specific explanation for the denial of placement at Century. Walmsley advised him that some of the matters considered were confidential but would not prevent the placement he sought. Plaintiff pursued an appeal. Ultimately, defendant Roberts gave the response that he made the decision to disapprove placement at Century based upon plaintiff's face sheet and input from the EAI department. Plaintiff unsuccessfully appealed from that response.

Several months later, on March 2, 2011, plaintiff submitted a grievance alleging that KDOC had placed similarly-situated prisoners

in Century while denying him placement. He spoke with defendant Walmsley, who said he had no information about that but stated he would investigate the matter. Later that day, Walmsley advised that plaintiff had been denied the placement because he had previously worked at Century but had given up the position to transfer to a facility closer to family and because he had received a disciplinary report while working for another private industry.

On March 3, 2011, plaintiff filed a grievance alleging discrimination. Walmsley responded explaining that there was a hiring policy with a preference for those who had less than 60 months remaining but this was subject to override and that there was a need to balance short- and long-term inmates in the workplace.

On March 4, 2011, plaintiff submitted another grievance, this time alleging discrimination and retaliation. He alleged that defendant Walmsley had attempted to present new information to support the decision not to place him in Century. Plaintiff alleged this was due to his race and to his pursuit of legal remedies in the state court.

Defendant Wilson, the Classification Administrator, responded to this grievance and stated that plaintiff's last two applications for employment at Century had been disapproved by two different sets of PMC members. The response found no evidence of any improper basis for those decisions.

On March 17, 2011, plaintiff filed an appeal from that grievance. The earlier response was upheld, and the Secretary of Corrections affirmed that response.

Additional facts are incorporated elsewhere in this order.

*Screening*

A federal court must conduct a preliminary screening of a case in which a prisoner seeks relief from a governmental entity or an officer or employee of such an entity. 28 U.S.C. § 1915A(a). At this stage, the court must identify any cognizable claim and must dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim for relief, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To avoid dismissal, a plaintiff must present factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must present "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The court accepts as true the well-pleaded allegations in the complaint, and will construe the allegations in the light most favorable to the plaintiff. *Id*. at 555. But "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the matter should be dismissed. *Id*. at 558.

Plaintiff's complaint asserts three claims, first, that defendants retaliated against him due to his pursuit of relief through grievances and a lawsuit filed in state court; second, that he was subjected to discrimination and the denial of equal protection in the assignment of prisoners to private industry employment; and third, that he suffered harassment and retaliation by the issuance of disciplinary reports and was denied due process in the related disciplinary proceedings.

*Denial of private industry placement*

It is settled that prison officials "may not retaliate against or harass an inmate because of the inmate's exercise of his

constitutional rights…even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)(internal citation omitted).

However, a prisoner is not "inoculated from the normal conditions of confinement … merely because he has engaged in protected activity." *Id*. The federal courts are not "to scrutinize and interfere with the daily operations of a state prison". *Id*.

To state a claim for relief, "[a]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* (internal citation omitted). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers … would not have taken place." *Id*.

In a First Amendment retaliation claim, an inference of a retaliatory motive may be undermined by evidence of intervening events. *Deschenie v. Board of Education of Central Consolidated School District No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007). The analysis of a claim of retaliatory conduct must be "undertaken in light of the general tenor of *Sandin*, which specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)(internal citation omitted).

While plaintiff claims the denial of private industry placement was retaliatory and discriminatory, neither his complaint nor any of the supporting grievances reflects any specific factual allegation that supports these bare claims. While plaintiff claims defendant Walmsley's remarks concerning the timing of his request were retaliation for his pursuit of legal and administrative remedies,

there is no factual support for that claim. The record shows that Walmsley in fact signed the recommendation drafted by defendant Perkins and delivered it to defendant Roberts for review. (Doc. 1, Ex. P. 14). There is no evidence that Walmsley took any action that was adverse to plaintiff's placement in Century.

Rather, the materials before the court suggest that the decision concerning plaintiff's placement request was based upon factors including the length of time remaining to be served on his sentence and his disciplinary history. These are neutral factors. Finally, because there is no evidence that Walmsley made the decision to deny placement, there is no nexus between Walmsley's remarks and the adverse decision. No claim of retaliatory conduct is stated.

Likewise, to the extent plaintiff alleges there was a conspiracy among the defendants to deny his rights, his bare claim is insufficient to state a claim for relief. "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claims." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). A plaintiff must present specific factual allegations that show agreement and concerted action among the defendants, *id.*, and the complaint does not satisfy this standard.

An equal protection violation occurs when government officials treat a prisoner differently than those who are similarly situated. *See generally City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439-40 (1985)(describing the Equal Protection Clause as "essentially a direction that all persons similarly situated should be treated alike.") To prevail on such a claim, a plaintiff must show that there was different treatment and, when such treatment is not based upon a suspect classification, the plaintiff must allege sufficient facts to demonstrate "the distinction between himself and

other inmates was not reasonably related to some legitimate penological purpose." *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)(citations omitted). However, where "bare equal protection claims are simply too conclusory to permit a proper legal analysis", the plaintiff fails "to raise any plausible equal protection claims." *See Straley v. Utah Bd. Of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009).

Plaintiff claims similarly-situated prisoners were allowed to work for Century while he was denied that placement. The materials before the court show that defendant Perkins submitted plaintiff's application to the PMC (Doc. 1, Ex., p. 11), that the narrative she prepared supported placement in Century, and that defendant Walmsley signed that document. *Id.*, p. 14. However, defendant Roberts disapproved that employment placement based upon plaintiff's face sheet and upon information from the EAI department. *Id.*

Plaintiff does not allege any specific facts that support a claim of an equal protection violation. He states only that similarly-situated prisoners were given placement in Century. There is no allegation of a suspect classification, nor is there any factual support that suggests that the placement of other, unidentified prisoners in private industry was not a distinction supported by a reasonable penological goal.

*Administrative disciplinary action*

Plaintiff also contends he was issued retaliatory disciplinary reports and was denied due process in two administrative disciplinary hearings. The underlying disciplinary reports are not related. The first arose from a November 28, 2010, incident in which plaintiff jogged through a metal detector in order to catch up to another inmate (Doc. 1, pp. 16-20), and a second incident in January 2011, arose from

an incident in which plaintiff failed to obey an order (*Id.*, pp. 20-22).

The plaintiff's allegations simply do not support a claim of retaliatory conduct. His claims establish that the first report was issued in November 2010, after he jogged through a metal detector, was called back by defendant Payton, the officer on duty, and was uncooperative after his request to go to the captain's office was refused. (Doc. 1, pp. 16-17).

First, to the extent plaintiff alleges the issuance of the disciplinary reports was retaliatory, the court finds he fails to state a claim for relief. "Retaliation claims in a prison context are viewed with 'skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Barksdale v. Connaghan*, 2012 WL 6770883, *5 (D. Colo. 2012)(quoting *Cochran v. Morris*, 73 F.3d 1310, 13137 (4th Cir. 2006)). Here, the facts alleged by plaintiff show that the reports were issued after contacts with defendants in which plaintiff's conduct, jogging through a metal detector and failing to cooperate, reasonably support that action. Plaintiff advances no more than a vague claim of retaliation.

Plaintiff also claims he was denied due process in the administrative disciplinary proceedings. He claims that in the disciplinary proceeding that arose from the metal detector incident, he was not allowed to question or call witnesses (Doc. 1, p. 19). He claims that in the second proceeding, he was not allowed to call witnesses from the EAI Unit and another officer to address his concerns about defendant Payton (*Id.*, pp. 21-22).

The Constitution requires due process when a person is to be

deprived of life, liberty, or property. *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994.) Accordingly, where a prison disciplinary hearing may result in the loss of good time credits, the prisoner is entitled to advance written notice of the charges; an opportunity to call witnesses and present documentary evidence, where that is consistent with institutional safety concerns; and a written statement of the reason for the decision and the evidence supporting that finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). A disciplinary hearing must be upheld if it is supported by "some evidence". *Id*.

However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). While plaintiff complains he was not allowed to call witnesses, that right is not absolute; instead, the administrative tribunal is allowed considerable flexibility on this point. *See Wolff*, 418 U.S. at 563-70 (setting out due process requirements and discretion vested in prison authorities who may refuse to call witnesses, "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases").

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court expanded upon its analysis in *Wolff* in considering the procedural due process protections that applied where a prisoner was subjected to 30 days in disciplinary segregation. The *Sandin* Court determined that the courts must look not to prison rules or regulations but to whether the prisoner was subjected to "restraint that imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." *Id.*

Here, the record reflects that the sanctions imposed involved brief placement in disciplinary segregation, restriction from privileges, and small fines (Doc. 1, p. 20, par. 100 and p. 22, par. 116.) Because the disciplinary actions against plaintiff did not result in "a major disruption in [his] environment" or "inevitably affect the duration of his sentence," he did not suffer the sort of atypical hardship that would trigger Due Process protections under *Sandin*. There is no basis for relief.

*Conclusion*

For the reasons set forth, the court concludes this matter may be summarily dismissed. Plaintiff's allegations do not state a plausible claim for relief under the standard set forth in *Twombley*.

IT IS, THEREFORE, BY THE COURT ORDERED this matter is dismissed for failure to state a claim upon which relief may be granted.

IT IS FURTHER ORDERED plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is granted. Collection action shall continue pursuant to 28 U.S.C. § 1915(b)(2) until plaintiff satisfies the $350.00 filing fee.

IT IS FURTHER ORDERED plaintiff's motions for extension of time (Docs. 5, 7, and 9) are denied as moot.

Copies of this order shall be transmitted to the plaintiff and to the Finance Office of the facility where he is incarcerated.

**IT IS SO ORDERED.**

DATED: This 26th day of March, 2013, at Topeka, Kansas.

S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge